## PINDALL *v.* LOAGUE.

Opinion delivered October 29, 1892.

*Lease to pay debts—Effect of discharge in bankruptcy.*

> A contract of lease stipulated that the rents should be applied to the payment of any debts which the lessor or his brothers owed the lessee, it being agreed that the lessee should assign to the lessor the claims against his brothers when paid. Certain of the lessor's debts referred to had been incurred prior to a discharge in bankruptcy. In a suit by the lessor to compel an accounting of rents, *held*, that the lessee is entitled to credit, upon the amount found due as rents, to the extent of the entire indebtedness of the lessor and his brothers; and the lessor is entitled to an assignment of so much of the lessee's claims against his brothers as may be discharged by such rents.

Appeal from Desha Circuit Court in Chancery.

JOHN M. ELLIOTT, Judge.

*Pindall & Rogers* for appellant.

*R. L. Bright* for appellant.

*After* Eddins' discharge in bankruptcy, he by the agreement promised *in writing* to pay all the indebtedness of himself and brothers. 26 Ill. App. 182; 122 N. Y. 408; 2 So. Rep. 332; 53 Am. Dec. 493; 52 *id.* 779; 67 *id.* 498; 86 N. C. 331; 53 N. Y. 521.

*J. E. Bigelow* for appellee.

1. The court properly discharged the notes of the plaintiff's brothers. They were not his notes, and he could only be made liable by virtue of his undertaking in the lease contract that they might be paid out of the net proceeds of the plantation. The appellant never complied with the stipulations in the lease, and without full performance he cannot claim credit. 2 Pars. Cont. sec. 4, ch. 3, part 2; 5 M. G. & S. 522; Bish. Cont. sec. 1420; 12 Johns. 165; 16 Oh. 238.

2. These notes when paid were to be assigned to plaintiff; this was never done.

BATTLE, J. On the 23d day of December, 1876, B. I. Eddins and his brothers, A. H. Eddins, T. T. Eddins and M. E. Eddins, were indebted to Jacob Vance in a large sum of money, and B. I. Eddins was the owner of a plantation in Desha county in this State, which was known as the "Graddy Plantation." To secure this indebtedness, B. I. Eddins entered with Vance into a contract in the following words:

"MEMPHIS, TENN., December 23, 1876.

"This Contract and Agreement entered into between B. I. Eddins, of Shelby county, Tennessee, of the first part, and Jacob Vance, of Lincoln county, Tennessee, of the second part:

"Witnesseth: That B. I. Eddins, of the first part, leases the Graddy Plantation in Desha county, Arkansas, for the term of five years, commencing January 1, 1877, unless the indebtedness of B. I. Eddins and brothers is paid sooner to the said Vance, with the following conditions between both parties: The said Vance agrees

to take charge of the said Graddy Plantation, and furnish all plow stock, farming implements, supplies for hands for said farm during the term of said lease, and to pay necessary expenses to run the same to the full capacity, according to the seasons of each year, for the best advantage of both parties, and not to give the hands more than one-half of the crop, unless the said Vance finds it to our interest to do otherwise. He also agrees to cultivate all cleared land under fence suitable, if it is possible for him to get hands to do so. He also agrees to fence and cultivate the deadening on said place. The said Vance is to own all plow stock and farming implements placed on said place by him until paid by said Eddins. The said Eddins, of the first part, agrees to take all horses and mules furnished by the said Vance to work on said place at a fair valuation on a credit until the 25th day of December, 1877, and to be charged with all moneys advanced by said Vance to run the said plantation. The said Vance is to run the said place as economically as he can. In consideration of all that Vance agrees to do in furnishing and running said place, the said Eddins agrees that the said Vance may own and dispose of all the crops made on said place during the term of this lease in the following way : First, to pay all expenses of running the said farm, charged to Eddins ; second, Vance is to pay himself five hundred dollars for his services for superintending the said place for each year ; and all balances of the net proceeds of crops raised on said place to be applied to any indebtedness which I owe to the said Vance, and what my brothers, A. H., T. T. and M. E. Eddins owe him at this time ; the said Vance to transfer the claims on my brothers to me when paid ; the balances, if any, to be paid to B. I. Eddins. At the expiration of this lease, the said Vance is to return the said plantation to the said B. I. Eddins in good order and condition, except the usual wear and

proper use of the same, with all the plows, horses and mules, also the farming implements, machinery and fixtures of said place.

"Witness our hands and seals in duplicate.

B. I. EDDINS,     [SEAL]
JACOB VANCE,    [SEAL]."

The indebtedness of B. I. Eddins referred to in this contract, and intended to be secured thereby, was evidenced by four notes, as follows : One note executed by B. I. Eddins, M. E. Eddins and W. E. Eddins, dated December 25, 1861, for $440, payable three months after date to John Maddox, and by him assigned to Jacob Vance; a balance of $677.08 due on a note executed by B. I. Eddins for $1550.70, dated January 10, 1862, and payable on or before December 25, 1862, to Jacob Vance and A. H. Eddins, administrators of S. G. Eddins, deceased ; one note of B. I. Eddins for $655.72, dated November 30, 1867, and payable one day after date · to Jacob Vance ; and one note executed by M. E. Eddins and B. I. Eddins for $1080, dated March 8, 1870, and payable one day after date to Jacob Vance. The indebtedness of the brothers mentioned in the contract, and thereby intended to be secured, was evidenced in part by five notes executed by A. H. Eddins, T. T. Eddins and M. E. Eddins, dated December 15, 1875, payable to Jacob Vance, due one day after date, for the following amounts : Three for $1000 each, making in the aggregate $3000, one for $939.49, and the other for $935.25.

Vance took possession of the " Graddy Plantation " under his contract with Eddins, and held and cultivated it for the time it was leased to him.

Some time in the year 1881 Eddins brought this action against Vance in the Desha circuit court, on the equity side, and charged him, in his complaint, with a failure to perform his contract in many respects, and alleged that he was considerably damaged thereby ; and

asked that an account be taken of such damage and the liabilities of Vance to him on account of the lease. Vance answered and claimed, among other things, that in any account that might be stated he should be credited with the indebtedness referred to in the lease.

During the pendency of this action Vance brought suit against A. H., T. T. and M. E. Eddins, on the notes executed by them as before stated, in the chancery court of Lincoln county, in the State of Tennessee, and on the 10th of April, 1884, recovered judgment against them, in that action, for the sum of $7,300.87, and afterwards collected thereon the sum of $1500. The object of the Tennessee suit was to prevent the statute of limitations barring the recovery of a judgment on the notes sued on.

On the hearing of this cause, the facts before stated, as well as other facts not necessary to mention, were shown by the preponderance of evidence adduced. It was also shown that B. I. Eddins was adjudged a bankrupt, and was, on the 17th of July, 1868, discharged from all debts and claims which were provable against his estate in bankruptcy, so far as he could be discharged therefrom, according to the act of Congress establishing a uniform system of bankruptcy throughout the United States then in force. The court found that he was only indebted to Vance for the amount due on the note executed by him and M. E. Eddins for $1080, and appointed a master and directed him to state an account as prayed for in the complaint. The master stated an account, in which he charged Vance, among other things, with the value of the cotton raised on the "Graddy Plantation" during the time he leased it, as found by the master, less the expenses incurred in raising the same, and with six per cent. per annum interest on the amount found owing by Vance on the crop of each year of the lease from the last day of the year in which the same was raised to the first day of January, 1888; and credited him, among

other things, with the amount due on the note of B. I. Eddins and M. E. Eddins for $1080, and with no part of the amount due on the other indebtedness referred to in the lease. Vance excepted to the account stated, because the master did not give him credit for such amounts, but the court overruled his exceptions, and approved the account. According to this account, Vance was liable to Eddins for a balance of $7808.60, for which, and six per cent. per annum interest thereon from the 26th of January, 1888, the day on which the master filed his report, to the day of the final decree herein, the court rendered judgment in favor of Eddins against Vance; and the defendant appealed.

Since the appeal in this action was taken, both parties have died, and the cause has been revived by agreement in the name of X. J. Pindall, as special administrator *ad litem* of Jacob Vance, deceased, appellant, against John Loague as public administrator of the estate of B. I. Eddins, deceased, appellee. Loague was appointed administrator by a court of the State of Tennessee.

During the argument of this cause, appellant stated to the court that he did not ask for judgment against appellee for any balance that Eddins owed Vance. This disclaimer limits our inquiry, and makes it only necessary for us to ascertain whether Vance owed Eddins anything, and, finding that he did not, relieves us of the necessity of making further investigation.

The manifest intention of the lease to Vance was to secure the payment of the indebtedness of Eddins and his brothers to him. It was only to continue five years, or until this indebtedness was paid. The parties to it thereby agreed that Vance should dispose of all the crops made on the "Graddy Plantation" during the term of the lease, and appropriate the proceeds thereof in the following manner: "First, to pay all expenses of running the said farm, charged to Eddins; second, Vance is

to pay himself five hundred dollars for his services for superintending the said place for each year; and all balances of the net proceeds of crops raised on said place to be applied to any indebtedness which I owe to the said Vance, and what my brothers, A. H., T. T. and M. E. Eddins owe him at this time, the said Vance to transfer the claims on my brothers to me when paid; the balances, if any, to be paid to B. I. Eddins." According to the terms of this lease Vance was entitled to a credit for the entire indebtedness intended to be secured thereby. Credited in this manner, and with interest on such indebtedness at the rate and for the same time he was charged by the master, as he in equity and good conscience was entitled to be, it is evident that Vance owed Eddins nothing, provided all the debits against him were correctly charged in the account stated, as to which there can be no controversy here on the part of appellee, as Eddins did not appeal.

Eddins' discharge in bankruptcy did not affect his contract to lease, as it was made after he was adjudged a bankrupt. He was not prohibited from obligating himself to pay the debts from which he was discharged. Indeed he was under a moral obligation to pay them when he could, and could have revived them by even a verbal promise to pay. *Lanagin* v. *Nowland,* 44 Ark. 84; *Worthington* v. *DeBardlekin,* 33 Ark. 651; *Apperson* v. *Stewart,* 27 Ark. 619.

Eddins and Vance were entitled to the performance of their contract. Vance was entitled to a credit for the sums $440, $677.08 and $655.72 and interest on each sum from the maturity of the respective notes executed by Eddins for the same to the first of January, 1888, on the $7808.60 which the master found to be owing by him on the last mentioned day; and, after this credit is given, Eddins is entitled to the assignment of so much of the aforesaid indebtedness of his brothers as will be equal to

the amount thereafter remaining and interest thereon. Not having the proper parties before us, we will not enforce this right of Eddins. It may be enforced in another action.

The decree of the circuit court is, therefore, reversed, and the complaint is dismissed.